# In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Savannah Division

| | |
|---|---|
| In the matter of: ) | Chapter 7 |
| ) | |
| JAMES T. TURNER, JR., ) | Number 15-40525-EJC |
| ) | |
| *Debtor.* ) | |
| _____) | |
| ) | |
| BRENT HARLANDER; ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | Adversary |
| v. ) | |
| ) | Number 15-04037-EJC |
| JAMES T. TURNER, JR., ) | |
| ) | |
| *Defendant.* ) | |
| _____) | |

## OPINION ON DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

More than forty years ago, the Debtor, James T. Turner, Jr. (the "Debtor"), founded J.T. Turner Construction Co. ("JTT Construction"), a general contractor in the Savannah, Georgia area. During that time, he served as JTT Construction's CEO, CFO and Secretary. In 2015, JTT Construction was forced to close its doors, and the Debtor filed his individual Chapter 7 case. Among the wreckage of this failed business were homeowners whose personal residences were under construction in the final days and weeks of JTT Construction's operation. At the time of JTT Construction's closing, these projects were

unfinished and subcontractors who had not been paid began asserting liens on the affected properties.

This adversary proceeding began when three of these homeowners, including plaintiff Brent Harlander (the "Plaintiff"), jointly filed a complaint (the "Original Complaint") seeking to hold the Debtor, as a shareholder and officer of JTT Construction, personally responsible for the damages resulting from JTT Construction's failure to pay subcontractors and complete construction of their homes. Specifically, the Plaintiff has accused the Debtor of allowing JTT Construction to obtain interim payments from Plaintiff based on false affidavits and diverting revenues from JTT Construction for his personal use through a variety of illegal means.

Since the filing of the Original Complaint, the Plaintiff has made multiple attempts to amend his complaint to add facts and allegations. Further, the Plaintiff has set forth significant, additional claims against the Debtor. Pending before the Court is the Debtor's Motion to Dismiss Plaintiff's Second Amended Complaint ("Motion to Dismiss") (adv. dckt. 57) filed on October 31, 2016. The Debtor seeks to dismiss the Plaintiff's complaint for failure to state a claim for relief under Rule 12(b)(6) of the Federal Rules of Civil Procedure[1] (hereinafter, "Federal Rule"). For the reasons stated below, the Court will GRANT, in part, and DENY, in part, the Debtor's Motion to Dismiss.

## I. JURISDICTION

This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28

---

[1]Federal Rule 12(b)(6) is made applicable to this adversary proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure (hereinafter, "Bankruptcy Rule").

U.S.C. § 157(a), and the Standing Order of Reference signed by then Chief Judge Anthony A. Alaimo on July 13, 1984. This is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(I) and (J).

## II. BACKGROUND

### A. The Original Complaint

On July 20, 2015, the Plaintiff filed his Original Complaint (in which he was improperly joined with two other plaintiffs) seeking a determination that any indebtedness that the Debtor owes him is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2), (a)(4) and (a)(6), and to bar Debtor's discharge pursuant to 11 U.S.C. § 727. (Adv. Dckt. 1). The Plaintiff also sought to liquidate his various state law claims against the Debtor, including damages for fraud, breach of contract, conversion, attorney's fees, and punitive damages. *Id.*

On August 20, 2015, the Debtor, pursuant to Federal Rule 12(b)(6), filed a Motion to Dismiss the Original Complaint (adv. dckt. 9) for failure to state a claim upon which relief could be granted. On December 30, 2015, the Court found the complaint insufficient to pass muster under Federal Rule 12(b)(6) and dismissed the complaint with leave to amend. (Adv. Dckts. 23, 24). Further, the Court found joinder of the three plaintiffs improper and dismissed the other two plaintiffs from this adversary proceeding. However, the Court permitted the two other plaintiffs to file separate complaints that would relate back to the date of the filing of the Original Complaint.

B. The Plaintiff's Attempts to Amend the Complaint

On January 15, 2016, the Plaintiff (now separated from the other two plaintiffs) timely filed an Amended Complaint (adv. dckt. 27) which provided greater detail regarding the claims brought by the Plaintiff in the original complaint. However, the Amended Complaint also set forth additional claims against the Debtor for violating the Georgia Fair Business Practices Act (the "FBPA"), O.C.G.A. § 10–1–390 *et seq.*, for necessary expenses pursuant to O.C.G.A. § 51-2-7, and for racketeering in violation of federal and state law (collectively, the "New Claims").[2]

On January 29, 2016, in response to the Amended Complaint, the Debtor filed another Motion to Dismiss pursuant to Federal Rule 12(b)(6). (Adv. Dckt. 31). The Court scheduled a hearing on the Motion to Dismiss for February 29, 2016. On February 26, 2016 (three days before the scheduled hearing), the Plaintiff filed a motion to amend his complaint (the "Second[3] Motion to Amend") (adv. dckt. 36) before the Court could rule on the Debtor's pending Motion to Dismiss. The Second Motion to Amend attached a proposed Second Amended Complaint[4], which provided even more detailed factual assertions, and alleged, for

---

[2]With regard to the New Claims, the Second Amended Complaint alleges that the Debtor's fraudulent conduct in this case was part of a greater scheme by the Debtor and other individuals to defraud customers of JTT Construction over a period of years.

[3] On October 18, 2015, the Plaintiff (along with the two joint plaintiffs) filed a motion to amend the Original Complaint (the "First Motion to Amend"). (Adv. Dckt. 13). Before the Court could rule on the First Motion to Amend, the Plaintiffs filed their First Amended Complaint on November 6, 2015. (Adv. Dckt. 15). In its order dated December 30, 2015 (adv. dckt. 24), the Court denied the First Motion to Amend as moot and struck the prematurely filed First Amended Complaint.

[4] The Original Complaint is 10 pages long and contains 9 counts and 40 paragraphs. (Adv. Dckt. 1). The first Amended Complaint is 24 pages long and contains 13 counts and 99 paragraphs. (Adv. Dckt. 27). The Second Amended Complaint is 57 pages long and contains 13

the first time, that the Debtor should be denied a discharge pursuant to 11 U.S.C. § 727(a)(2), (3) and (4) for concealing property of the estate, destroying financial records, and falsely testifying at the § 341 Meeting of Creditors. (Adv. Dckt. 36-1).

After the February 29, 2016 hearing, the Court took the Debtor's Motion to Dismiss under advisement and requested that the Debtor file a response to the Plaintiff's Second Motion to Amend (which he did on March 11, 2016 and on April 14, 2016). The Court then held a hearing on the Second Motion to Amend on April 29, 2016. At this hearing, the Plaintiff advised the Court that he had yet additional factual information and exhibits to add to his complaint. To prevent the filing of another motion to amend, the Court instructed the Plaintiff to attach, as a supplement to the Second Motion to Amend, a revised Second Amended Complaint containing the newly discovered information.[5]

On September 23, 2016, the Court granted the Plaintiff's Second Motion to Amend (adv. dckt.46) and the Plaintiff filed his Second Amended Complaint on October 3, 2016 (adv. dckt. 48). On October 31, 2016, the Debtor filed the instant Motion to Dismiss seeking to dismiss each count of the Plaintiff's Second Amended Complaint pursuant to Federal Rule 12(b)(6).

---

counts and 217 paragraphs. (Adv. Dckt. 48).

[5] On May 6, 2016, the Plaintiff filed his Supplement to Second Motion to Amend Complaint (adv. dckt. 45), attaching as Exhibit "A" a revised Second Amended Complaint together with copies of the contracts between Harlander and JTT Construction.

C. The Second Amended Complaint

In his Second Amended Complaint, the Plaintiff alleges the following facts, which the Court must take as true[6]:

**1. The Alleged Illegal Scheme, In General**

The Debtor founded JTT Construction as a "closely held" corporation under the laws of the State of Georgia in 1976. (Adv. Dckt. 48, ¶ 6). JTT Construction was headquartered in Savannah, Georgia and provided general contracting services throughout Georgia and across state lines. *Id.* at ¶ 7. At all relevant times, the Debtor served as the CEO, CFO and Secretary of JTT Construction and ran, oversaw, and directed the daily business operation of JTT Construction. *Id.,* ¶ 8, 13.

The Debtor also founded and/or directed the formation of a Georgia limited liability company known as J.T. Turner Construction Company of Savannah ("JTT Savannah"). *Id.* at ¶ 7. From its creation, the Debtor has represented to the public that JTT Savannah is owned and controlled by his son, James T. Turner III, when in fact it is owned and operated by the Debtor. *Id.* at ¶ 16. JTT Savannah is presently operating as a going concern in the state of North Carolina. *Id.*

During its operation, it was the standard practice of JTT Construction to enter into written construction contracts whereby customers agreed to make interim payments to JTT Construction upon receipt of JTT Construction's periodic applications for payment as construction progressed. (Adv. Dckt. 48, ¶ 19). As is typical in the construction industry,

---

[6]In ruling on a motion to dismiss, the court must accept the factual allegations contained in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

AO 72A
(Rev. 8/82)

these contracts required JTT Construction to provide its customers with subcontractor/supplier lien waivers and a payment application containing sworn certifications that JTT Construction had paid its subcontractors in full for the work performed prior to such application. *Id.* at ¶ 20.

According to the Second Amended Complaint, beginning in approximately 2009 or 2010, JTT Construction instituted a practice whereby it would, at the Debtor's direction, submit certifications to customers that subcontractors were being paid, when in fact they were not. *Id.* at ¶ 21. In reliance on the certifications customers would make payments to JTT Construction. *Id.* at ¶ 22. However, instead of paying subcontractors, the Debtor would divert the customers' payments for his own personal use. *Id.* Further, to avoid detection, the Debtor allegedly funneled the customers' funds through a network of limited liability companies and closely held corporations (the "Placement Companies"). *Id.* at ¶ 27.

**2. The Harlander Project**

On or about March 10, 2014, Plaintiff, along with his wife, engaged JTT Construction to serve as the general contractor for the construction of their home located at 2 Hampton Place, Savannah, Georgia 31411 (the "Project"). *Id.* at ¶ 49. Pursuant to the terms of the contract, JTT Construction was required to make payments to subcontractors and suppliers and to keep the Project free and clear of all liens. *Id.* at ¶ 64. In order for JTT Construction to receive payment from Plaintiff for services provided by either itself or subcontractors, JTT Construction was required to provide Plaintiff with an Application for Payment ("Application") and lien waivers. *Id.* at ¶ 65.

Beginning on or about April 2, 2014, JTT Construction periodically provided Plaintiff with Applications and lien waivers, which contained sworn certifications that amounts due to subcontractors for work performed on the Project had been paid. (*Id.* at ¶ 66). Specifically, the certifications stated:

> [JTT Construction] certifies that to the best of [JTT Construction's] knowledge, information and belief the Work covered in this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by [JTT Construction] for Work for which previous Certificates for Payment were issued and payments received from [the Debtor], and that current payment shown herein is now due.

(*Id.* at Ex. B).

The Plaintiff was provided with eleven (11) such sworn Applications with the final Application being provided on or about February 4, 2015. *Id.* at ¶ 67. These Applications were created and signed under oath by the Debtor and/or other employees of JTT Construction. *Id.* at ¶ 68. In reliance on these Applications, the Plaintiff made progress payments to JTT Construction in the form of wire transfers totaling no less than $1,456,259.00. *Id.* at ¶ 69.

In March 2015, the Plaintiff began to receive service copies of liens and/or threats of liens on his home from subcontractors who had not been paid by JTT Construction. *Id.* at ¶ 78. However, the Plaintiff had already paid JTT Construction for the labor and materials for which these liens were asserted. *Id.* at ¶ 79. To remove the liens, clear title and preserve warranties, the Debtor was forced to "double pay" for labor and materials in the amount of at least $399,179.76. *Id.* at ¶ 81.

### 3. The Plaintiff's Legal Theories

Based on these factual allegations, and others that will be described below, the Plaintiff seeks a monetary judgment against the Debtor on various state and federal law claims, including damages for fraud (Count IV), breach of contract (Count V), conversion (Count VI), violations of the Georgia Fair Business Practice Act (Count VII), attorney's fees (Count VIII), racketeering in violation of 18 U.S.C. § 1961, *et al.* and O.C.G.A. § 16-14-1 (Counts IX, X), necessary expenses (Count XII), and punitive damages (Count XIII). In addition, the Plaintiff seeks a determination from this Court that any indebtedness Debtor owes him is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2) (Count I), § 523(a)(4) (Count II) and § 523(a)(6) (Count III), and to bar the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(2), (3) and (4) (Count XIV).

## III. CONCLUSIONS

In his Motion to Dismiss, the Debtor argues that each count of the Plaintiff's Second Amended Complaint should be dismissed pursuant to Federal Rule 12(b)(6) for failing to state a claim for which relief may be granted. (Adv. Dckt. 57). In addition, the Debtor argues the amended § 727 claims and the New Claims are time barred by Bankruptcy Rules 4004(a) and 4007(c), respectively, because they do not relate back to the filing of the original complaint under Federal Rule 15(c).

### A. Applicable Deadlines for Complaints Objecting to Discharge and the Dischargeability of Particular Debts

Federal Rule of Bankruptcy Procedure 4004(a) states that a complaint objecting to a debtor's discharge under § 727 shall be filed not later than 60 days following

the first date set for the meeting of creditors held pursuant to § 341(a). Fed. R. Bankr. P. 4004(a). Bankruptcy Rule 4007(c) provides the same 60-day deadline for a creditor to file a complaint to determine the dischargeability of a debt under § 523(c)[7]. Bankruptcy courts consider these deadlines akin to a statute of limitations and construe them strictly. *Ziyad v. Wright (In re Wright)*, 2012 WL 7679996 at *1 (Bankr. N.D. Ga. 2012). This 60-day statute of limitations is "among the very shortest under federal law" and "is designed to further the 'fresh start goals' of bankruptcy relief; it requires creditors to promptly join their exceptions to discharge of debt and objections to discharge, so a petitioning debtor will enjoy finality and certainty in relief from financial distress as quickly as possible." *Austin Farm Center, Inc. v. Harrison (In re Harrison)*, 71 B.R. 457, 459 (Bankr. D. Minn. 1987).

The Plaintiff's Original Complaint was filed on the last day allowed under Bankruptcy Rules 4004(a) and 4007(c). This complaint, as described in this Court's previous opinion, was deficient in numerous aspects. (Adv. Dckt. 23) As a result, the Court dismissed the entirety of the Original Complaint, but granted Plaintiff leave to amend. *Id.* However, the deficiencies contained in the Original Complaint still create a problem for the Plaintiff. Now that the 60-day deadline under Bankruptcy Rule 4004(a) and 4007(c) has long passed, the only way certain of the claims in the Plaintiff's Second Amended Complaint will survive is if they relate back to the timely filed, but highly deficient, Original Complaint.

---

[7] Section 523(c) states that a debtor shall be discharged from a debt of a kind specified in § 523(a)(2), (4), or (6) unless a creditor to whom such debt is owed requests that the court determine otherwise. 11 U.S.C. § 523(c). Bankruptcy Rule 4007(c) establishes the deadline for when such request must be made.

B. "Relation Back"

Pursuant to Federal Rule 15(c)[8], an amended pleading will relate back to the date of the original pleading[9] when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). "Congress intended Rule 15(c) to be used for a relatively narrow purpose; it did not intend for the rule to be so broad to allow an amended pleading to add an entirely new claim based on a different set of facts." *Farris v. United States*, 333 F.3d 1211, 1215 (11th Cir. 2003). However, a plaintiff may add a new legal theory to an amended pleading as long as it arises out of the same conduct, transaction or occurrence. *Miller v. American Heavy Lift Shipping*, 231 F.3d 242 (6th Cir. 2000). The key consideration is "whether the original complaint gave the defendant fair notice of the newly alleged claims." *Wilson v. Fairchild Republic Co.*, 143 F.3d 733 738 (2nd Cir. 1998); *see also Slayton v. American Express Co.*, 460 F.3d 215, 228 (2nd Cir. 2006) ("the central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading").

The Debtor argues that the Plaintiff's amended § 727 claims (Count XIV), as well as the New Claims (Counts VII, IX, X and XII), do not relate back under Federal Rule 15(c) because they differ in both time and type from the original pleadings, and thus are time

---

[8]Federal Rule 15(c) is made applicable to this adversary proceeding by Bankruptcy Rule 7015.

[9]The original pleading in this case is the Original Complaint.

barred by Bankruptcy Rule 4004(a) and 4007(c). (Adv. Dckt. 57, p. 24). The Court will review the application of Federal Rule 15(c) to the § 727 claims and the New Claims.

### 1. The Amended § 727 Claim

The Plaintiff's Original Complaint, filed on July 20, 2015, included the following count under 11 U.S.C. § 727:

**COUNT VIII – OBJECTION TO DISCHARGE PURSUANT TO 11 USC § 727**

40.

For the foregoing reasons, Plaintiffs object to Defendant's discharge pursuant to 11 USC § 727.

(Adv. Dckt. 1).

Section 727 of the Bankruptcy Code sets forth twelve (12) separate statutory bases upon which a creditor (or trustee) may object to a debtor's discharge. *See* 11 U.S.C. § 727(a). But these twelve grounds are vastly different and require specific facts to support a denial of discharge under each ground. The Plaintiff did not even hazard a guess as to which grounds might support denial of discharge. A creditor can successfully object to discharge on a single ground – but a creditor must specify one or more grounds. And, to survive a Federal Rule 12(b)(6) motion to dismiss, a creditor must set forth sufficient facts to support that ground. The Court has reviewed all thirty-nine (39) paragraphs preceding paragraph 40 of the Original Complaint and has searched in vain for language that would support, in any way, a denial of the Debtor's discharge under 11 U.S.C. § 727[10].

---

[10]The Plaintiff's Amended Complaint filed on January 15, 2016 was equally deficient. It added only one additional paragraph which stated, "Plaintiff re-alleges, as if fully set forth herein, each and every allegation contained in the preceding paragraphs of this Complaint for Damages." The Plaintiff once again made no attempt to specifically allege any of the twelve grounds provided for in 11 U.S.C. § 727(a).

AO 72A
(Rev. 8/82)

In short, there was no plausible basis for denial of discharge set forth in the Plaintiff's Original Complaint. For all practical purposes the Plaintiff's allusion to § 727 was meaningless, and there is nothing here to be resurrected by relation back of an amendment under Rule 15(c).

Even if the Original Complaint contained a legitimate § 727 claim, the Court finds that the § 727 claims in the Second Amended Complaint do not properly relate back under Federal Rule 15(c). The Plaintiff's Original Complaint set forth allegations related solely to the Debtor's alleged fraudulent conduct in seeking interim payments for the construction of the Plaintiff's home. The Second Amended Complaint now asserts claims against the Debtor pursuant to § 727(a)(2), (3) and (4) for falsification of records, concealment of assets, destruction of documents and making a false oath at his § 341 meeting. These claims are all based upon an entirely new set of facts unrelated to the Debtor's fraudulent conduct alleged in the Original Complaint. Accordingly, the Court will dismiss Count XIV of the Second Amended Complaint as untimely pursuant to Bankruptcy Rule 4004(a).

### 2. The New Claims

The Debtor argues that the New Claims (violation of the Georgia Fair Business Practices Act, necessary expenses, and racketeering under state and federal law) involve allegations that differ in both time and type from the Original Complaint, and thus do not relate back under Federal Rule 15(c). The Court does not agree.

The Plaintiff's claim for a violation of the Georgia Fair Business Practices Act is based upon the Debtor's fraudulent conduct in seeking interim payments for the

construction of the Plaintiff's home, which the Plaintiff attempted to set out in his Original Complaint. While the Second Amended Complaint is substantially more thorough, it merely asserts a new legal theory arising out of the same conduct asserted in the Original Complaint. *See Miller*, 231 F.3d at 248 ("a court will permit a party to add even a new legal theory in an amended complaint as long as it arises out of the same transaction or occurrence."). Accordingly, the Court finds that the Georgia Fair Business Practices Act claim (Count VII) is not time barred because it relates back to the Original Complaint under Federal Rule 15(c).[11]

The Court also finds that the Plaintiff's federal and state racketeering claims properly relate back to the Plaintiff's Original Complaint. "If the original complaint referred to general acts of fraud or other predicate acts that might support a RICO claim, then a later amendment adding a RICO claim would 'relate back' to the original complaint." *Tho Dinh Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 35 (2d Cir.2002) (citing *Benfield v. Mocatta Metals Corp.*, 26 F.3d 19, 23 (2d Cir.1994). The Original Complaint attempted to set forth allegations regarding the Debtor's fraudulent misappropriation of funds which should have been used to pay subcontractors who had performed work on the Plaintiff's home. Although the Second Amended Complaint alleges the fraudulent conduct on a larger scale – that it occurred over many years and affected numerous customers of JTT Construction – it still arises out of the same operative facts set out in the Original Complaint.

---

[11]However, as discussed below, the Court will dismiss this count of the Second Amended Claim pursuant to Federal Rule 12(b)(6).

While the general fraud scheme may not have been fully developed in the Original Complaint, the initial allegations of fraud provided sufficient notice that Debtor's alleged conduct could result in a related racketeering claim. *See Daniels v. Bursey*, 313 F.Supp.2d 790, 811 n. 7 (N.D. Ill. 2004) (noting summarily that plaintiffs' RICO claim related back to the original complaint, which only contained a common law fraud claim, since both claims arose from the same conduct); *accord Reynolds v. Condon*, 908 F.Supp. 1494 (N.D.Iowa 1996) (allowing relation back of a newly alleged RICO claim where the original complaint alleged only fraud because the RICO predicate acts arose from the same "common nucleus of operative fact" as the fraud claim). Accordingly, the Court finds that the Plaintiff's racketeering claims, both federal and state (Counts IX and X), properly relate back to the Original Complaint under Federal Rule 15(c).

The last of the New Claims is Count XII by which the Plaintiff seeks to recover necessary expenses pursuant to O.C.G.A. § 51-12-7[12]. As addressed in footnote 11, this claim is not a separate cause of action, but rather damages that may be recoverable in connection with the other counts. Accordingly, the Court finds that the "relation back" principles of Federal Rule 15(c) are not applicable to Count XII.

C. Rule 12(b)(6) Standards

A complaint should be dismissed under Federal Rule 12(b)(6) where it appears that the facts alleged fail to state a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for

---

[12]O.C.G.A. § 51-12-7, which is titled "Recovery of Necessary Expenses" provides: "In all cases, necessary expenses consequent upon an injury are a legitimate item in the estimate of damages."

failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Glock v. Glock*, 2017 WL 1049448 (N.D. Ga. 2017) (citing *Twombly*, 550 U.S. at 556). Under Federal Rule 8(a)(2)[13], a plaintiff needs only to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a)(2). However, "[a] complaint that provides labels and conclusions or a formulaic recitation of the elements of a cause of action is not adequate to survive a Rule 12(b)(6) motion to dismiss." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In ruling on a motion to dismiss, the court must accept factual allegations as true and construe them in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 678. Dismissal for failure to state a claim is appropriate if the facts as pleaded, taken as true, fail to state a claim for relief that is plausible on its face. *Stringer v. Doe*, No. 12-10119, 2013 WL 163833, at *2 (11th Cir. Jan. 15, 2013) (citing *Iqbal*, 556 U.S. at 678). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

Federal Rule 9(b)[14] mandates a heightened pleading standard when pleading a claim for fraud or mistake. Under this rule, a plaintiff is required to: "[S]tate with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge and

---

[13]Federal Rule 8(a)(2) is made applicable to this adversary proceeding by Bankruptcy Rule 7008.

[14]Federal Rule 9(b) is made applicable to this adversary proceeding by Bankruptcy Rule 7009.

other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "However, Rule 9(b)'s heightened pleading standard is applied less stringently when specific factual information about the details of the fraud are peculiarly within the defendants' knowledge and control." *Great Florida Bank v. Countrywide Home Loans, Inc.*, 2011 WL 382588 at * 5 (S.D. Fla. 2011) (citations omitted). Still, the Plaintiff must support his or her pleading with "specific facts supporting a strong inference of fraud." *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Ga., Inc.*, 755 F. Supp. 1040, 1052 (S.D. Ga. 1990).

The Eleventh Circuit has held that Federal Rule 9(b) may be satisfied if the complaint sets forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997) (internal quotations omitted).

The Court will address each count[15] of the Second Amended Complaint in light of the standards of Federal Rule 12(b)(6).

---

[15]The Court need not address the Plaintiff's § 727 claims (Count XIV) as it is time barred by Bankruptcy Rule 4004(a). Further, the Court finds it unnecessary to address the Plaintiff's claims for attorney's fees (Count VIII), necessary expenses (Count XII) and punitive damages (XIII) at this time, as those do not appear to be separate causes of action, but rather damages that may be recoverable in connection with the other counts.

### 1. Count I - 11 U.S.C. § 523(a)(2)(A) - Fraud

A debt is non-dischargeable pursuant to § 523(a)(2)(A) to the extent money, property, services, or an extension, renewal, or refinancing of credit, was obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or insider's financial condition. The elements of § 523(a)(2)(A) are similar to those required for common law fraud: (1) the defendant made a false representation with the intention of deceiving the creditor; (2) the creditor relied on the false representation; (3) the reliance was justified; and (4) the creditor sustained a loss as a result of the false representation. *In re Blizerian*, 153 F.3d 1278, 1281 (11th Cir. 1998). The objecting party must establish each of the four elements of fraud by a preponderance of the evidence. *Grogran*, 498 U.S. at 291.

The Debtor argues that the Plaintiff's Second Amended Complaint fails to state a claim under § 523(a)(2)(A) because the Plaintiff's construction contract was with JTT Construction, not the Debtor individually. Further, the Debtor asserts that he did not personally make any representations to the Debtor, nor did he sign[16] any of the alleged false Applications. Several courts, however, have held that individual debtors, in certain circumstances, may be held personally liable for fraudulent activities committed by a corporation. *See e.g.*, *In re Riddle*, 2015 WL 1038473 at * 5 (Bankr. N.D. Ga. 2015) ("[t]he allegations in the Amended Complaint allow the inference that Defendant controlled PL, Clarity and Foundation Express and thus directed the diversion of accounts receivable which

---

[16] The Court is unable to decipher the signatures on the Applications attached to the Second Amended Complaint. However, the Plaintiff has alleged that they are the Debtor's signature, which the Court must take as true for purposes of this Motion to Dismiss.

is sufficient to state a claim [under 11 U.S.C. § 523(a)(2)(A)]"); *In re Nelms*, 2014 WL 3700511 (Bankr. M.D. Ala. 2014); *In re Zaffron*, 303 B.R. 563 (Bankr. E.D.N.Y. 2004).

The Second Amended Complaint alleges that the Debtor, as an officer of JTT Construction, knowingly drafted and/or signed the false Applications for the purpose of inducing the Plaintiff to pay per the terms of the construction contract. (Adv. Dckt. 48, ¶ 66). Further, Plaintiff alleges that he relied on the false Applications in making progress payments to JTT Construction totaling $1,456,259.00. *Id.* at ¶ 69. The Plaintiff asserts that the Debtor wrongfully misdirected at least $399,179.76 of these funds for his personal benefit, including payment of other obligations of the Debtor and JTT Construction. *Id.* at ¶ 81. As a result, Plaintiff alleges that he was forced to "double pay" unpaid subcontractors at least $399,179.76. *Id.*

The Court finds that these allegations allow for the inference that the Debtor controlled JTT Construction and directed its employees to submit the allegedly false Applications to the detriment of the Plaintiff. Accordingly, the Court finds that the Plaintiff has pleaded facts sufficient to support a claim under § 523(a)(2)(A). The Court will deny the Debtor's Motion to Dismiss as to Count I of the Second Amended Complaint.

## 2. Count II - 11 U.S.C. § 523(a)(4) - Embezzlement

Section 523(a)(4) excepts from discharge in bankruptcy any debt arising from "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." The

Plaintiff alleges that the Debtor is guilty of embezzlement within the meaning of 11 U.S.C. § 523(a)(4)[17].

"Embezzlement" is generally defined as "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *U.S. v. Petti*, 459 F.2d 294 (3d Cir. 1972). Thus, a creditor seeking to establish a claim for embezzlement under § 523(a)(4) must show the following elements: (1) the creditor entrusted the property to the debtor, (2) the debtor misappropriated the property for a non-intended use, and (3) there are indicators of fraud." *Ball v. McDowell (In re McDowell)*, 162 B.R. 136, 140 (Bankr.N.D.Ohio 1993).

The Plaintiff's Second Amended Complaint fails to state a claim for embezzlement pursuant to § 523(a)(4). While there is an assertion of fraudulent intent and misappropriation of use, there is no allegation that the *Debtor* was entrusted with the property of the Plaintiff. Rather, the money the Debtor allegedly misused for his own purposes was money that belonged to JTT Construction. Once the Plaintiff paid JTT Construction for work performed on his home, the funds became property of JTT Construction. *See In re Schultz*, 46 B.R. 880 (Bankr. D. Nev. 1985). Because the money at issue did not belong to the Plaintiff, he cannot allege that the Debtor embezzled it from him. If anyone has a claim of embezzlement against the Debtor it is JTT Construction. Accordingly, the Plaintiff has not

---

[17] The Original Complaint alleged that "[the Debtor] is guilty of fraud and defalcation while acting in a fiduciary capacity, embezzlement, and larceny." The Second Amended Complaint, however, only alleges a claim of embezzlement. Accordingly, it appears that the Plaintiff has abandoned his allegations of defalcation while acting in a fiduciary capacity and larceny.

stated a viable cause of action pursuant to § 523(a)(4), and thus the Court will dismiss Count II of the Second Amended Complaint.

### 3. Count III - 11 U.S.C. § 523(a)(6) - Willful and Malicious Injury

Section 523(a)(6) excepts from discharge in bankruptcy any debt that results from "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Thus, in order to avoid a dismissal for failure to state a claim, a plaintiff must plead facts, which taken as true, allow the court to draw the reasonable inference that (1) there was injury to another entity or to the property of another entity; (2) the injury was inflicted by the debtor; and (3) the debtor inflicted the injury willfully and maliciously. *In re May*, 2013 WL 441440 at *2 (Bankr. S.D. Ga. Feb. 5, 2013) (J. Davis). The allegations in Plaintiff's Second Amended Complaint allow the Court to infer all three.

First, the allegations in the Second Amended Complaint give an account of how Plaintiff paid JTT Construction for the work performed on the Project, and how JTT Construction failed to compensate its subcontractors from such payments. As a result, the subcontractors placed liens or threatened to place liens on the Plaintiff's home, which caused the Plaintiff to expend at least $399,179.76 to resolve the liens and demands for payment from unpaid subcontractors. Taken as true, these factual allegations lead to the reasonable inference that Plaintiff was injured both by having to make payments for which it was not responsible and by the legal expenses of resolving the subcontractors' liens.

Plaintiff has also sufficiently pleaded that the injury was inflicted by the Debtor. The Second Amended Complaint alleges that the Debtor was an officer of the

corporation that injured Plaintiff and that the Debtor knowingly misappropriated the Plaintiff's payments for his personal benefit. The Eleventh Circuit has found that when an officer of a corporation actively participates in the infliction of an injury, that officer can be held liable for the injury in such a way that the debt is non-dischargeable in the officer's personal bankruptcy under § 523(a)(6). *Ford Motor Credit Co. v. Owens*, 807 F.2d 1556, 1559-60 (11th Cir. 1987); *In re Penton*, 299 B.R. 701, 705 (Bankr. S.D. Ga. Aug. 29, 2003) (J. Dalis); *In re Roden*, 488 B.R. 736, 744 (N.D. Ala. 2013). Accordingly, by alleging that Debtor was both an officer of JTT Construction and an active participant in the injury, the Complaint states a plausible claim that the Debtor inflicted the injury.

Finally, the Second Amended Complaint alleges that the false Applications were provided at the specific instance and direction of the Debtor. The reasonable inference that can be drawn from this statement is that the Debtor's action was an act of willfulness[18]. Further, the Plaintiff alleges that the Debtor misappropriated the Plaintiff's payments to JTT Construction for his own use. Again, a reasonable inference can be drawn that if such allegation is true, the Debtor plausibly acted with malice[19].

Accordingly, the Court finds that the Plaintiff has sufficiently pleaded all elements of 11 U.S.C. § 523(a)(6). The Debtor's Motion to Dismiss will be denied as to Count III of the Second Amended Complaint.

---

[18] The word "willful" in § 523(a)(6) means "deliberate or intentional." *Kawaauhau v. Geiger*, 523 U.S. 57, n. 3 (1998).

[19] The Eleventh Circuit has held that "malicious" means "wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will." In re Jennings, 670 F.3d 1329, 1332 (11th Cir. 2012).

### 4. Count IV - Fraud

As previously mentioned, the elements of § 523(a)(2)(A) are similar to those required for fraud under Georgia law. The only difference between the elements fraud under 11 U.S.C. § 523(a)(2)(A) and under Georgia law is the type of reliance required. *In re Melton*, 2013 WL 2383657 at *13 (Bankr. N.D. Ga. 2013). Under Georgia law, the type of reliance is "reasonable," while under § 523(a)(2)(A) the reliance must be "justifiable." *Id.* The Court reiterates its conclusion above with respect to the Plaintiff's § 523(a)(2)(A) claim, and finds the allegations in the Second Amended Complaint sufficient to plead the "reasonable" reliance element of fraud under Georgia law.

### 5. Count V - Breach of Contract

The Second Amended Complaint alleges that the Debtor and JTT Construction breached the parties' construction contract by failing to promptly pay subcontractors for labor and materials furnished. (Adv. Dckt. 48, ¶ 114-115). The Plaintiff further alleges that the Debtor's misappropriation of funds was a material breach of the construction contract. *Id.* at ¶ 117. As a result of these alleged breaches, the Plaintiff asserts that he suffered damages by having to "double pay" unpaid subcontractors at least $399,179.76, in addition to cost overruns of $71,204.79[20]. *Id.* at ¶ 119.

The Debtor argues that the Plaintiff's breach of contract claim fails to state a claim because he cannot be liable on a contract to which he was not a party. The Court agrees. In Georgia, privity of contract must exist between parties in order to maintain a suit

---

[20]If the Court is called upon to liquidate the Plaintiff's claim for fraud, it will then consider whether the claim of $71,204.79 in cost overruns are damages related to the fraud.

on the contract. *Sofet v. Roberts*, 185 Ga. App. 451 (1987). The Second Amended Complaint does not allege any facts which indicate that privity of contract exists between the Plaintiff and the Debtor. In fact, the contract attached[21] to the complaint clearly designates the parties as Brent Harlander, Lisa Hancock Harlander and JTT Construction. (Adv. Dckt. 48, Ex. A). Accordingly, the Court will dismiss Count V of the Second Amended Complaint.

### 6. Count VI - Conversion

The Plaintiff alleges that "as detailed in the factual allegations stated above and as evidenced by the exhibits attached hereto, [the Debtor's] wrongful taking of Plaintiff's property by presentment of false affidavits intended to induce payments and wire transfers of monies constitutes trover, conversion, and theft within the meaning of OCGA § 51-10-6, OCGA § 51-12-5.1(b), OCGA § 16-8-2, and OCGA § 16-8-15." (Adv. Dckt. 48, ¶ 120). The Second Amended Complaint does not set forth any further explanation as to what allegations are applicable to which code section. *Id.* at ¶ 121. This general, conclusory statement makes it difficult, if not impossible, to determine which allegations in the Second Amended Complaint form the basis of the Plaintiff's argument.

The Court is uncertain, but it appears as though the Plaintiff is attempting to recover damages from the Debtor under O.C.G.A. § 51-10-6[22] based on a violation of two criminal statutes: O.C.G.A. § 16-8-15 (theft by conversion of payments for property

---

[21] While the Court may not generally consider matters outside the pleadings for purposes of a motion to dismiss, the Court may consider certain relevant appended documents that are "central to plaintiff's claim[s] and the authenticity of the document is not challenged." *Adamson v. Poorter*, 2007 WL 2900576, at *2 (11th Cir. 2007).

[22] O.C.G.A. § 51-10-6 allows "any owner of personal property . . . to bring a civil action to recover damages from any person . . . who commits a theft as defined in Article 1 of Chapter 8 of Title 16 involving the owner's personal property." O.C.G.A. § 51-10-6(a).

improvements) and O.C.G.A. § 16-8-2 (theft by taking). If true, the Plaintiff has not attempted to allege any of the necessary elements to establish a violation of O.C.G.A. §§ 16-8-15 or 16-8-2, nor has the Plaintiff alleged that the Debtor has been charged with or found guilty of a violation of these code sections. Accordingly, the Court will dismiss Count VI of the Second Amended Complaint.

### 7. Count VII - Violation of Georgia Fair Business Practice Act

The Second Amended Complaint also alleges in Count VII that the Debtor has violated the Georgia Fair Business Practices Act by "engaging in a pattern of unfair and deceptive acts and practices both in the conduct of consumer transactions and in trade and commerce as set forth in the preceding paragraphs. . . ." In order to bring a private FBPA claim under O.C.G.A. § 10-1-399, a plaintiff must establish three elements: a violation of the Act, causation and injury. *Zeeman v. Black*, 156 Ga. App. 82, 86-87 (1980).

By its terms, the FBPA applies to "deceptive acts or practices in the conduct of consumer transactions" such as "passing off goods or services as those of another" or causing confusion as to the source of goods or services. *Williams v. Wells Fargo Bank, N.A.*, 2013 WL 1189500 at *5 (N.D. Ga. 2013); *See* O.C.G.A. § 10-1-393. Plaintiff does not allege any acts that could conceivably give rise to such a violation of the FBPA. Accordingly, the Court will dismiss Count VII of the Second Amended Complaint.

### 8. Counts IX and X - Federal and State RICO Claims[23]

The Second Amended Complaint alleges violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") under three separate bases, 18 U.S.C. § 1962(b), (c) and (d). The Court will first address the sufficiency of the Debtor's § 1962(c) claim because it is the most common RICO claim.

To plead a civil RICO claim under § 1962(c) the Plaintiff must show that he was injured by the Debtor's (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). As will be explained, the Court finds that the Plaintiff has sufficiently pleaded all of the elements required for a RICO claim under 18 U.S.C. § 1962(c).

### I. "Conduct"

Section 1962(c) is predicated on a defendant having "conduct[ed] or participate[d], directly or indirectly , in the conduct of [the] affairs of the enterprise." *In Reves v. Ernst & Young*, the Supreme Court held that to satisfy the "conduct" requirement, one must participate in the operation or management of the enterprise itself." 507 U.S. 170 (1993). Further, the Supreme Court understood the word "conduct" to indicate some degree of direction over the affairs of the enterprise. *Id.* at 178.

Along with his son and other unnamed co-conspirators, the Debtor is alleged to have participated in the enterprise's affairs as an "owner and/or member and/or controller,

---

[23]The Second Amended Complaint alleges that the Debtor violated the federal and Georgia racketeering acts, 18 U.S.C. § 1961 *et seq.*, O.C.G.A. § 16-14-1 *et seq.*, and that the Debtor conspired to violate those acts. The federal and Georgia racketeering acts are "essentially identical," meaning failure to state a claim under the federal act warrants dismissal under the Georgia act. *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 705 (11th Cir. 2014). Accordingly, the Court need not separately address the Plaintiff's state RICO claims.

and/or employee (directly and indirectly)" of the enterprise. Generally, it is alleged that the Debtor used JTT Construction and JTT Savannah, legitimate residential and commercial construction companies, as a means of "inducing unsuspecting customers to pay over large monthly wire transfers" which were purportedly being used to pay subcontractors and suppliers. (Adv. Dckt. 48, ¶ 136). It is further alleged that the payments were instead wrongfully misdirected for the benefit of the enterprise, with said funds being laundered through the Placement Companies. *Id.* The Court finds these allegations are sufficient to meet the "conduct" requirement of a RICO claim.

### ii. "Of an Enterprise"

The "conduct" or "participation" alleged must have been part of the affairs of an "enterprise." *In re Jamuna Real Estate, LLC*, 416 B.R. 412 (2009). The statute specifically defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Here, the Plaintiff appears to allege the existence of an association-in-fact enterprise.

The Supreme Court has found that an association-in-fact enterprise must possess three qualities: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). It is "simply a continuing unit that functions with a common purpose." *Id.* at 948, 129 S.Ct. 2237. To show there is an association-in-fact enterprise at the motion to dismiss phase, the Eleventh Circuit "has never required anything

other than a 'loose or informal' association of distinct entities." *Williams v. Mohawk Indus.*, 465 F.3d 1277, 1284 (11th Cir. 2006).

The Second Amended Complaint alleges that "[the Debtor], [JTT Construction], [JTT Savannah] and the Placement Companies comprised an association of enterprises and collectively an association-in-fact RICO enterprise in and of itself." (Adv. Dckt. 48, ¶ 140). The Plaintiff further alleges that "[the Debtor], along with the corporate officers and employees of [JTT Construction] and [JTT Savannah] functioned as a unit, had a common purpose" to "defraud customers through wire and mails, for the express purpose of embezzling and laundering away their money through [the Placement Companies] *Id.* at ¶ 141, 143. The Court finds these allegations are sufficient to meet the "enterprise" requirement of a RICO claim.

### iii. "Through a Pattern"

To demonstrate a pattern of racketeering activity, the Plaintiff must allege that "(1) the defendant committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a continuing nature." *Jackson v. BellSouth Telecom.*, 372 F.3d 1250, 1264 (11th Cir. 2004).

### a. Two or More Predicate Acts

The Second Amended Complaint alleges that the Debtor's racketeering activity included "qualifying thefts, acts of fraud, acts of embezzlement, wire fraud, mail fraud, money laundering, and bankruptcy fraud. . . ." (Adv. Dckt. 48, ¶ 167). The Plaintiff further

alleges that these alleged predicate acts[24] continued for a period of at least two years as to Plaintiff (beginning in April 2014) and as to other customers of JTT Construction and JTT Savannah as far back as 2010. *Id.* at ¶ 146. Accordingly, the Plaintiff has sufficiently alleged that the Debtor committed two or more predicate acts within a ten-year time span.

### b. Relatedness

The Supreme Court has adopted a broad multi-factor test for relatedness. It focuses on whether the alleged predicate acts "have the same or similar purposes, results, participants, victims, or methods of commission, or are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 240 (1989). The Plaintiff alleges that the enterprise supplied customers of JTT Construction with the false Applications by U.S. Mail and received funds from the customers in form of wire transfers. (Adv. Dckt. 48, ¶ 149, 151). The enterprise is then alleged to have misappropriated the customers' funds for personal gain and, to avoid detection, laundered the funds through the Placement Companies. *Id.* at ¶ 153. The Court finds the Second Amended Complaint sufficiently establishes a nexus between the alleged predicate acts because they all serve the purpose of furthering the Debtor's alleged scheme of defrauding customers of JTT Construction.

### c. Continuity

The Supreme Court has identified two methods of establishing continuity. Under the "closed-ended" approach, continuity is established by showing "a series of related

---

[24] The Plaintiff only alleges the predicate acts of wire fraud, mail fraud and money laundering with any specificity. Id. at ¶ 147-154. Accordingly, the Court will not consider the allegations of theft, fraud and bankruptcy fraud as predicate acts.

predicates extending over a substantial period of time" that "amount to" a threat of continued criminal activity. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989). Because the RICO statute was only intended to reach long-term criminal conduct, "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy [the continuity] requirement." *H.J.*, 492 U.S. at 242. Under the "open-ended" approach, a RICO plaintiff need not wait for a long-term pattern to develop, but may state a claim so long as the alleged "racketeering acts themselves include a specific threat of repetition extending indefinitely into the future [or] . . . are part of an ongoing entity's regular way of doing business." *Id.*

The Plaintiff alleges that the Debtor's racketeering activity occurred "over a period of years and believed to be as far back as 2010 and for at least the two year period prior to the effective close of JTT Construction in early 2015." (Adv. Dckt. 48, ¶ 173). Further, the Plaintiff alleges that the Debtor continues to engage in racketeering activity through his continued operation of JTT Savannah in North Carolina. *Id.* at ¶ 182. The Court finds these allegations sufficient to establish a continued threat of racketeering activity[25].

---

[25]The Debtor cites *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184-85 (2d Cir. 2008) for the proposition that any scheme that lasts less than two years does not sufficiently allege a closed-ended continuous criminal scheme. (Adv. Dckt. 31). Accordingly, the Debtor argues that there cannot be closed-ended continuity because the alleged scheme, with respect to the Plaintiff, lasted only 11 months. *Id.* Further, the Debtor asserts that there is no open-ended continuity because JTT Construction closed in Spring of 2014. *Id.* However, such arguments are not appropriate at this time. For purposes of this Motion to Dismiss, the Court must look only to the allegations contained in the Second Amended Complaint, which claims that the Debtor's scheme lasted several years and that the Debtor continues to conduct the scheme through JTT of Savannah.

### iv. "Racketeering Activity"

The federal RICO statute defines "racketeering activity" as any act which is indictable under a set of federal and state statutes. 18 U.S.C. § 1961(4). These acts include mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343) and money laundering (11 U.S.C. § 1956). Here, the Plaintiff alleges that the Debtor engaged in a pattern of racketeering activity consisting of mail fraud, wire fraud and money laundering.

#### a. Mail and Wire Fraud

The elements of mail fraud and wire fraud are: 1) the existence of a schemed to defraud; 2) the participation by the defendant in the particular scheme with the specific intend to defraud; and 3) the use of the United States mail or of wire communications in furtherance of the fraudulent scheme." *United States v. Syme*, 276 F.3d 131, 142 (3d Cir. 2002). The use of the mail or wires need not be essential to the scheme. *Schmuck v. United States*, 489 U.S. 705, 710 (1989). Instead, that use may be merely incidental to an essential part of the scheme. *Id.*

The Court has already concluded that the Plaintiff has sufficiently alleged the Debtor's scheme to intentionally defraud the Plaintiff as well as other customers of JTT Construction. Thus, the Court need only address whether it is adequately alleged that the Debtor used the United States mail or wires in furtherance of such scheme. The Debtor alleges that JTT Construction, at the direction of the Debtor, caused the allegedly false Applications to be sent and delivered by the U.S. Postal Service to JTT Construction's customers. (Adv. Dckt. 48, ¶ 149). The Plaintiff also alleges that the Debtor used the wires,

via e-mail, to communicate with Plaintiff and to request wired funds.[26] *Id.* at ¶ 151. The Court finds these allegations sufficient to establish the required elements of mail and wire fraud.

### b. Money Laundering

A claim for money laundering under RICO requires allegations that a person conducted a financial transaction with money he knew to be the proceeds of unlawful activity, with the intent to promote the carrying on of specified unlawful activity. 11 U.S.C. § 1956(a)(1)(B)(I); *United States v. Flynn*, 15 F. 3d 1002 (11 Cir. 1994). The Plaintiff alleges that the Debtor misappropriated the fraudulently obtained payments from JTT Construction's customers and "elected to move those funds through the Placement Companies for the purpose of avoiding detection, to avoid scrutiny, to conceal the illegal activities, and to further perpetuate the ongoing fraud." (Adv. Dckt. 48, ¶ 153-54). The Court finds these allegations sufficient to satisfy the elements of a "money laundering" claim.

### v. Injury

In addition to proving racketeering activity, a civil RICO plaintiff must show that the racketeering activity caused him to suffer an injury. *Beck v. Prupis*, 162 F.3d 1090, 1095 (11th Cir. 1998). Furthermore, the racketeering activity must be more than simply the "but for" cause of the injury; it must also be the proximate cause. *Id.* In the Second Amended Complaint, the Plaintiff alleges that the Debtor's false Applications, which were supplied through the mails and wire, induced him to make interim payments to JTT Construction.

---

[26] The Plaintiff attached a sampling of these emails to the Second Amended Complaint. (Adv. Dckt. 48, Ex. D).

(Adv. Dckt. 48, ¶ 179). The Plaintiff alleges that these payments were not paid to subcontractors, but were instead misappropriated by the Debtor and laundered through the Placement Companies. *Id.* at ¶ 153. As a result, the Plaintiff was forced to "double-pay" unpaid subcontractors at least $399,179.76. *Id.* at ¶ 81. The Court finds these allegations sufficient to establish that the Debtor's racketeering activity (mail fraud, wire fraud and money laundering) was the proximate cause of the Plaintiff's damages.

Based on the foregoing, the Second Amended Complaint sufficiently pleads a RICO claim based on 18 U.S.C. § 1962(c). Accordingly, the Debtor's Motion to Dismiss will be denied as to the Plaintiff's claim under 18 U.S.C. § 1962(c).[27]

### vi. 18 U.S.C. § 1962(b) - "Interest In or Control"

In addition to the 18 U.S.C. § 1962(c) RICO claim addressed above, the Plaintiff alleges a RICO claim under § 1964(b), which makes it unlawful for "any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in . . . interstate or foreign commerce." In order to recover under this section: "[A] plaintiff must show injury from the defendant's acquisition or control of an interest in a RICO enterprise, in addition to injury from the predicate acts. Such an injury may be shown, for example, where the owner of an enterprise infiltrated by the defendant as a result of racketeering activities is injured by the defendant's acquisition or control of his enterprise." *Lightning Lube, Inc. v. Witco Corp.*, 4

---

[27] The Court also finds that the Plaintiff has sufficiently pleaded a claim under the related Georgia RICO statute (O.C.G.A. § 16-14-4(b)).

F.3d 1153, 1190 (3d Cir. 1993). "[T]he congressional intent of § 1962(b) was to prevent racketeers from acquiring control of businesses." *Reves*, 507 U.S. at 181-82.

Here, the Court is unable to find any allegations in the Second Amended Complaint which establish that the Debtor took or exercised control of the enterprise through racketeering activity. Further, the Second Amended Complaint does not allege any injury from the Debtor's acquisition or control of an interest in a RICO enterprise; rather the only injuries the Plaintiff alleges are those that resulted from the predicate acts themselves. Accordingly, the Plaintiff's 18 U.S.C. § 1962(b) claim must be dismissed for failure to state a claim.[28]

### vii. 18 U.S.C. § 1962(d) - "Conspiracy"

The Plaintiff's final RICO claim is based upon 18 U.S.C. § 1962(d), which establishes conspiracy liability. This statute makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). "To plausibly state a claim for a violation of 18 U.S.C. § 1962(d), plaintiffs must successfully allege all the elements of a RICO violation, as well as alleging the existence of an illicit agreement to violate the substantive RICO provision." *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 411 (6th Cir. 2012) (citations omitted). The Second Amended Complaint only provides a general, conclusory statement that "[the Debtor] conspired with James T. Turner, III and The Placement Companies and other co-conspirators as an enterprise in a deliberate effort to defraud customers." Although the Plaintiff has

---

[28]The Court will also dismiss the related Georgia RICO claim (O.C.G.A. § 16-14-4(a)).

AO 72A
(Rev. 8/82)

successfully alleged all the elements of a RICO violation (as discussed above), there are no allegations of the existence of an illicit agreement between these parties to violate RICO. Accordingly, the Plaintiff's claim under 18 U.S.C. § 1962(d) must be dismissed[29].

## IV. CONCLUSION

When evaluated under the limits of Federal Rule 12(b)(6), much of the Plaintiff's Second Amended Complaint will survive until another day. This preliminary stage of the litigation has consumed nearly two years. Even though the Court has denied the Debtor's Motion to Dismiss as to certain counts, the Court realizes that the Plaintiff, in order to prevail at trial on the claims that now remain, will have to bring witnesses and documents to prove the fraudulent scheme which his complaint sets forth.

For now, the Court will enter a separate order granting the Debtor's Motion to Dismiss as to Counts II, V, VI, VII, IX (as to 18 U.S.C. §§ 1962(b) and 1962(d)), X (as to O.C.G.A. §§ 16-14-4(a) and 16-14-4(c)) and XIV and denying the Motion to Dismiss as to Counts I, II, IV, VIII, IX (as to 18 U.S.C. § 1962(c) only), X (as to O.C.G.A. § 16-14-4(b) only), XII and XIII[30].

Dated at Savannah, Georgia, this 31st day of March, 2017

Edward J. Coleman, III, Judge
United States Bankruptcy Court
Southern District of Georgia

---

[29]The Court will also dismiss the related Georgia RICO claim (O.C.G.A. § 16-14-4(c)).

[30]There is no Count XI in the Second Amended Complaint.

AO 72A
(Rev. 8/82)